# RECORD NO. 12-1487

## In The
# United States Court of Appeals
### For The Fourth Circuit

**WILSON WORKS, INC., a West Virginia Corporation,**

*Plaintiff – Appellant,*

v.

**GREAT AMERICAN INSURANCE GROUP; GREAT AMERICAN E&S INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY, d/b/a CNA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; THE TRAVELERS INDEMNITY COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; TRAVELERS GROUP; THE CHARTER OAK FIRE INSURANCE COMPANY,**

*Defendants – Appellees,*

and

**WELLS FARGO INSURANCE SERVICES; AMERICAN INTERNATIONAL GROUP, INC.; AMERICAN INTERNATIONAL COMPANIES, d/b/a AIG,**

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG**

---

### CONSOLIDATED BRIEF OF APPELLEES

---

**John A. Smith**
*Lead Counsel for Appellees*
FLAHERTY SENSABAUGH BONASSO PLLC
**200 Capitol Street**
**Charleston, West Virginia  25338**
**(304) 205-6386**

*Counsel for Appellees*
  *Travelers Indemnity Company, Travelers*
  *Property Casualty Company of America,*
  *Travelers Group and The Charter Oak*
  *Fire Insurance Company*

**Stephen J. Dalesio**
SWARTZ CAMPBELL, LLC
**4750 U.S. Steel Tower**
**600 Grant Street**
**Pittsburgh, Pennsylvania  15219**
**(412) 227-5703**

*Counsel for Appellees*
  *Great American Insurance Company &*
  *Great American Company and*
  *Great Group*

# RECORD NO. 12-1487

**Patrick Fredette**
**Jennifer Bilz**
**MCCORMICK BARSTOW, LLP**
**312 Walnut Street, Suite 1050**
**Cincinnati, Ohio  45202**
**(513) 762-7520**

*Counsel for American International*
  *Group, Inc, American International*
  *Companies, and National Union Fire*
  *Insurance Company of Pittsburgh, PA*

**Joseph Craycraft**
**SWARTZ CAMPBELL, LLC**
**1223 Main Street, Suite 1000**
**Wheeling, West Virginia  26003**
**(304) 232-2790**

*Counsel for Columbia Casualty Company*

**Michael Kotula**
**RIVKIN RADLER LLP**
**926 RXR Plaza**
**Uniondale, New York  11556**
**(516) 357-3000**

*Counsel for Great American Insurance*
  *Company and Great American*
  *Insurance Group*

## CORPORATE DISCLOSURE STATEMENT

Great American E&S Insurance Company is 100% owned by Great American Insurance Company, which is 100% owned by American Financial Group, Inc., a publicly held company. Great American Insurance Group does not exist as a corporate entity or parent corporation in the State of West Virginia or any other state.

Columbia Casualty Company incorrectly identified as Columbia Casualty Company, d/b/a CNA ("Columbia Casualty") is wholly owned by Continental Casualty Company. Continental Casualty Company is wholly owned by The Continental Corporation. The Continental Corporation is wholly owned by CNA Financial Corporation, a publicly traded company. CNA Financial Corporation is 90% owned by Loews Corporation, a publicly traded company. CNA Surely Corporation, also a publicly traded company, is an affiliate of Continental Casualty Company.

National Union Fire Insurance Company of Pittsburgh, PA., ("National Union") is a wholly-owned subsidiary of Chartis, U.S., Inc. which is a wholly-owned subsidiary of Chartis, Inc., which is a wholly-owned subsidiary of AIUH LLC, which is a wholly-owned subsidiary of American International Group, Inc.

The Charter Oak Fire Insurance Company is 100% owned by The Travelers Indemnity Company which is 100% owned by Travelers Insurance Group Holdings, Inc., which is 100% owned by Travelers Property Casualty Corporation, which is 100% owned by The Travelers Companies, Inc. The Travelers Companies Inc. is the only publicly held company in the corporate family.

Travelers Property Casualty Company of America, formerly known as The Travelers Indemnity Company of Illino is 100% owned by the Phoenix Insurance Company, which is 100% owned by Travelers Insurance Group Holdings, Inc., which is 100% owned by Travelers Property Casualty Corporation, which is 100% owned by The Travelers Companies, Inc., The Travelers Companies Inc. is the only publicly held company in the corporate family.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...........................................................................vi

I.    JURISDICTIONAL STATEMENT ...............................................................1

II.   STATEMENT OF THE CASE ...................................................................2

III.  STATEMENT OF FACTS ........................................................................3

      A.    The Walhonde Amended Complaint..................................................3

      B.    Wilson Works' Discovery Responses ..............................................3

      C.    The Polices ...............................................................................4

IV.   SUMMARY OF ARGUMENT...................................................................6

V.    ARGUMENT.......................................................................................7

      1.    THE DISTRICT COURT CORRECTLY APPLIED WEST
            VIRGINIA LAW IN EVALUATING THE ALLEGATIONS
            IN THE UNDERLYING PATENT INFRINGMENT ACTION
            IN MAKING ITS COVERAGE DETERMINATION .........................7

            A.    Contrary to Wilson Works' argument, in determining the
                  duty to defend the district court applied the very standard
                  as urged by Wilson Works in its brief .......................................7

      2.    THE DISTRICT COURT CORRECTLY FOUND THAT
            COVERAGE A DOES NOT PROVIDE COVERAGE FOR
            PATENT INFRINGEMENT AND THE DERIVATIVE
            INTENTIONAL TORTS ...................................................................10

            A.    Patent Infringement Is Not Damage To or Loss of Use of
                  Tangible Property..................................................................10

iii

       1.     Infringement of Patent is not "Physical Damage to Tangible Property"..........................................................11

       2.     The *Walhonde* Action Does Not Allege "Loss of Use of Tangible Property"..............................................11

   B.    Patent Infringement Is Not An "Occurrence"...........................16

   C.    The District Court Correctly Observed that Any Alleged "Property Damage" Did Not Occur During the National Union or Columbia Casualty Policy Periods.............................26

3.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT COVERAGE B IS NOT TRIGGERED BY THE *WALHONDE* ACTION....................................................................27

   A.    "Patent Infringement" Does Not Constitute "Advertising Injury"........................................................................................27

   B.    Walhonde's Alleged Injury Was Not Caused by Wilson Works' Advertising....................................................................30

   C.    The Alleged "Personal and Advertising Injury" Ceased Prior to Inception of the National Union and Columbia Casualty Policy Periods.............................................................32

   D.    Damages Arising Out Of Patent Infringement are Specifically Excluded by The Columbia Casualty, Great American And National Union Policies...................................33

   E.    Plaintiff Has Failed To Carry Its Initial Burden to Demonstrate An Offense Occurred Within Travelers Policy Period.............................................................................36

   F.    The Excess And Umbrella Carriers Have No Duty to Defend............................................................................................38

   G.    There Is No Need To Certify A Question Of Law To The West Virginia Supreme Court Of Appeals.............................40

VI.    CONCLUSION...............................................................................42

 VII.   ORAL ARGUMENT IS NOT NECESSARY ..............................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABM Indus Inc. v. Zurich American Ins. Co.*,
    2006 U.S. Dist. LEXIS 67884 (N.D. Cal. 2006) .................................... 12, 15

*Aetna Casualty & Surety Company v. Pitrolo*,
    176 W.Va. 190, 342 S.E.2d 156 (1986) ........................................................ 8

*Aluise v. Nationwide Mutual Fire Insurance Co.*,
    218 W.Va. 498, 625 S.E.2d 260 (2005) ...................................................... 16

*Am. Modern Home Ins. Co. v. Corra*,
    2009 U.S Dist. LEXIS 98533 (S.D. W.Va. 2009) ....................................... 20

*Am. Modern Home Ins. Co. v. Corra*,
    222 W.Va. 797, 671 S.E.2d 802 (2008) ........................................... 19, 20, 21

*American Comm. Ins. Co. v. Porto*,
    811 A.2d 1185 (R.I. 2002) ........................................................................... 34

*AmSouth Bank v. Gupta*,
    838 So.2d 205 (Miss. 2002) ......................................................................... 25

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992) ................................................................................. 31

*Bruceton Bank v. U.S.F.&G. Ins. Co.*,
    199 W.Va. 548, 486 S.E.2d 19 (1997) ...................................................... 8, 9

*Camden-Clark Memorial Hospital Ass'n v. St. Paul Fire & Marine Ins. Co.*,
    224 W.Va. 228, 682 S.E.2d 566 (2009) ...................................................... 37

*Cmty. Antenna Servs. v. Westfield Ins. Co.*,
    173 F. Supp. 2d 505 (S.D. W. Va. 2001) .................................................... 19

*Collin v. Amer. Empire Ins. Co.*,
  21 Cal. App. 4th 787 (Cal. Ct. App. 1994)......................................................12

*Commercial Union Ins. Co. v. Image Control*,
  918 F. Supp. 1165 (N.D. Ill. 1996)........................................................ 11-12

*Corder v William W. Smith Excavating Company*,
  210 W.Va. 110, 556 S.E.2d 77 (2001) ....................................................*passim*

*Edmondson v. Am. Motorcycle Ass'n*,
  7 Fed. Appx. 136 (4th Cir. 2001)...................................................................11

*Erie Insurance and Property Casualty v.*
*Poineer Home Improvement Inc.*,
  206 W.Va. 506, 526 S.E.2d 28 (1999) ........................................15, 21, 23, 24

*Feldman Law Group P.C. v. Liberty Mut. Ins. Co.*,
  2011 U.S. Dist. LEXIS 88561 (S.D.N.Y. 2011) ...........................................34

*Fibreboard v. Hartford Accident & Indemnity Co.*,
  20 Cal. Rptr.2d 376 (Cal. Ct. App. 1993)......................................................26

*Fire Ins. Exchange v. Superior Court*,
  181 Cal. App. 4th 388 (Cal. Ct. App. 2010)..................................................19

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*,
  20 F. Supp. 2d 798 (M.D. Pa. 1998)..............................................................32

*Gen. Accident Ins. Co. v. West American Ins. Co.*,
  49 Cal. Rptr. 2d 603 (Cal. Ct. App. 1996)......................................................33

*Gibraltar Cas. Co. v. Sargent & Lundy*,
  574 N.E.2d 664 (Ill. App. Ct. 1990)...............................................................12

*Global ADR, Inc. v. City of Hammond*,
  2004 U.S. Dist. LEXIS 23794 (E.D. La. 2004)................................. 12-13, 16

*Greenwich Ins. Co. v. RPS Prods.*,
  379 Ill. App. 3d 78 (Ill. App. Ct. 2008)..............................................11, 34, 35

*Haney v. Cont'l Cas. Co.*,
    2010 U.S. Dist. LEXIS 3953 (S.D. Miss. 2010) ...........................................25

*Harbor East-Office, LLC v. Travelers Cas. & Sur. Co*.,
    1999 U.S. App. LEXIS 20837 (4th Cir. 1999)...............................................15

*Hawaiian Ins. & Guar. Co. v. Blair, Ltd.*,
    6 Haw. App. 447 (Haw. Ct. App. 1986)........................................................15

*Homedics, Inc. v. Valley Forge Ins. Co.*,
    315 F.3d 1135 (9th Cir. 2003) .......................................................................30

*Horace Mann Ins. Co.  v. Gen. Star Nat'l Ins. Co.*,
    514 F.3d 327 (4th Cir. 2008) .........................................................................39

*Houston Petroleum Co. v. Highlands, Inc. Co.*,
    830 S.W.2d 153 (Ct. App. Tex. 1990)....................................................13, 16

*I.D.G., Inc. v. St. Paul Fire & Marine Ins. Co.*,
    2000 U.S. App. LEXIS 1680 (10th Cir. 2000)..............................................15

*Imperial Colliery Co., v. Cities Service Oil and Gas Corporation*,
    1993 U.S. Appeals LEXIS 16821 (4th Cir. 1993)....................................41, 42

*In Re: Charco, Inc.*,
    2004 U.S.D. LEXIS 23160 (S.D.W.Va. 2004) ......................................40, 41

*Iolab Corp. v. Seaboard Sur. Co.*,
    15 F.3d 1500 (9th Cir. 1994) .......................................................................31

*Jarvis v. Pennsylvania Cas. Co*.,
    129 W.Va. 291, 40 S.E.2d 308 (1946) ..........................................................37

*L. Ray Packing Co., v. Commercial Union Ins. Co.*,
    469 A.2d 832 (Me. 1983) ...............................................................................12

*Markel Ins. Co. v. Danieley*,
    2010 U.S. Dist. LEXIS 10833 (S.D. W. Va. 2010)........................................26

*Maxconn, Inc. v. Truck Ins. Exchange*,
    74 Cal. App. 4th 1267 (1999) ......................................................................30

*Meyers & Sons Corp. v Zurich American Ins.*,
    74 N.Y.2d 298, 546 N.Y.S.2d  818, 545 N.E.2d 1206 (1989) .....................31

*Miller v. N.R.M. Petroleum Corp.*,
    570 F. Supp. 28 (N.D. W.Va. 1983) .............................................................41

*Morningstar v. Black & Decker Manufacturing Co.*,
    162 W.Va. 857 25 S.E.2d 666 (1979) .....................................................40, 41

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*,
    515 F.3d 414 (5th Cir. 2008) ................................................................12, 16

*Nationwide Property & Casualty v. Comer*,
    559 F. Supp. 2d 685 (S.D. W.Va. 2008) .......................................................16

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. United States Liquids, Inc.*,
    271 F. Supp. 2d 926 (S.D. Tex. 2003)....................................................31, 35

*Newark Morning Ledger Co. v. United States*,
    507 U.S. 546 (1993).......................................................................................11

*North American Precast, Inc v. General Casualty Company of Wisconsin*,
    2008 U.S. Dist. LEXIS 26621 (S.D. W.Va. 2008)............................14, 15, 24

*Nutter v. St. Paul Fire & Marine Ins. Co.*,
    2011 U.S. Dist. LEXIS 6715 (N.D. W.Va. 2011) ........................................34

*O'Brien v. Tri-state Oil Tool Industries Inc.*,
    566 F. Supp. 1119 (S.D. W.VA. 1983) .........................................................41

*Paradigm v. Texas Richmond Corp.*,
    942 S.W.2d 645 (Tex. App. 1997) .......................................................... 34-35

*Parkham Indus. Distribs. v. Cincinnati Ins. Co.*,
    2008 U.S. Dist. LEXIS 11642 (W.D. Ky. 2008)..........................................36

*Payne v. Weston*,
    195 W.Va. 502, 466 S.E.2d 161 (1995) .......................................................37

*Ralph v. Pilkin*,
    183 S.W.3d 362 (Tenn. App. 2005) ...................................................15, 16

*RH&M Machine Co. v. Westfield Ins. Co.*,
    141 F.3d 1159 (4th Cir. 1998),
    1998 U.S. App. LEXIS 8353 (4th Cir. 1998) ...................................30

*Rhein Bldg. Co. v. Gehrt*,
    21 F. Supp. 2d 896 (E.D. Wis. 1998) ............................................30

*Secura Supreme Ins. Co. v. M.S.M.*,
    755 N.W.2d 320 (Ct. App. Minn. 2008) ........................................34

*Simpson-Littman v. Erie Ins. Prop. Cas. Ins. Co.*,
    2010 U.S. Dist. LEXIS 95378 (S.D. W.VA. 2010).........................18

*Snug Harbor, Ltd. v. Zurich Ins.*,
    968 F.2d 538 (5th Cir. 1992) ...................................................12, 16

*St. Paul Fire and Marine Insurance Company v.*
*Advanced Interventional Systems Inc.*,
    824 F. Supp. 583 (E.D. Va. 1993), *aff'd*,
    21 F.3d 424 (4th Cir. 1994) ...................................27, 28, 29, 31

*State Auto Mutual Insurance v. Alpha Engineering Services Inc.*,
    208 W.Va. 713, 542 S.E.2d 876 (2000) ..........................................8

*State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co.*,
    483 S.E.2d 228 (W. Va. 1997) ......................................................17

*State Bancorp, Inc. v. U.S.F.&G. Insurance Co.*,
    199 W.Va. 99, 483 S.E.2d 228 (1997) ......................................9, 32

*State ex rel. Allstate Ins. Co. v. Karl*,
    190 W. Va. 176, 437 S.E.2d 749 (W.Va. 1993)............................39

*Sunex International v. Travelers Indemnity Co.*,
    185 F. Supp. 2d 614 (S.C. 2001) ...............................................................30

*T C. Development and Design, Inc. v. DiscountRamps.com LLC et al.*,
    2011 U.S. Dist. LEXIS 36031 (E.D. Wis. 2011) .........................................35

*U.S. Test, Inc., v. NDE Envt'l Corp.*,
    196 F.3d 1376 (Fed. Cir. 1999) ..........................................................6, 14, 30

*United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*,
    129 Ohio App.3d 45 (Ct. App. 2d 1998) .....................................................35

*Vencill v. Cont'l Cas. Co.*,
    433 F. Supp. 1371 (S.D. W.Va. 1997) .........................................................39

*Ventana Med. Sys. v. St. Paul Fire & Marine Ins. Co.*,
    2011 U.S. App. LEXIS 21374 (9th Cir. 2011) ..............................................36

*Webster County Solid Waste Authority v. Brackenrich & Associates*,
    217 W. Va. 304, 617 S.E.2d 851 (2005) .........................................15, 23, 24

*Weedo v. Stone-E-Brick, Inc.*,
    81 N.J. 233, 249, 405 A.2d 788, 796 (1979) .........................................21, 22

*West Virginia Fire & Casualty Co. v. Stanley*,
    216 W.Va. 40, 602 S.E.2d 483 (2004) .......................................................8, 9

**STATUTES**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1332(a) .................................................................................................1

28 U.S.C. § 1441(a) .................................................................................................1

35 U.S.C. § 101 *et seq.*........................................................................................35

35 U.S.C. § 286 ......................................................................................................38

W.Va. Code § 51-1A-3 ..........................................................................................40

**RULES**

Fed. R. App. P. 28(a)(7) and (e) .............................................................17

Fed. R. App. P. 4(a)(1)(A) .......................................................................1

**OTHER AUTHORITIES**

7C J. Appleman, Insurance Law and Practice § 4682 (1979 & Supp. 1992)..........39

Black's Law Dictionary, 113 7th Ed. (1999)..........................................11

Windt, Insurance Claims and Disputes 11:22A *Arising out of Exclusions*
(5th ed. 2010) ....................................................................................34

# I. JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), inasmuch as there was complete diversity of citizenship and the matter in controversy exceeded $75,000, exclusive of interest and cost.  The case was timely removed to federal court pursuant 28 U.S.C. § 1441(a). Joint Appendix ("JA") 12.   The district court's Order of March 14, 2012 granted summary judgment to Appellees but the case remained pending against one defendant, Wells Fargo Insurance Services. JA 1511-1523.   (Wilson Works Complaint contained claims for negligence and breach of contract against Wells Fargo for its alleged failure as Wilson Works' insurance agent to obtain patent infringement coverage. JA 36-38.)   By Order entered March 22, 2012 the district court directed its Order of March 14, 2012 be entered as a Final Judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  JA 1528-1530. Wilson Works Inc. filed a timely Notice of Appeal on April 13, 2012.  FRAP 4(a)(1)(A). JA 1539-1540. This Court has jurisdiction to review the district court's final order.  28 U.S.C. § 1291.

This brief is being filed as a joint brief on behalf of each of the Defendant-Appellees pursuant to this Court's Briefing Order Filed May 22, 2012.  Where a section of the brief concerns an argument of behalf of certain Defendant-Appellees, the remaining Defendant-Appellees take no position with respect to the arguments raised in that point.

1

## II.  STATEMENT OF THE CASE

Wilson Works filed its Complaint against the Great American Insurance Group, Great American E & S Insurance Company, Columbia Casualty Company, incorrectly identified as Columbia Casualty Company d/b/a CNA, American International Group, Inc. (not a party on appeal), American International Companies, d/b/a AIG (not a party on appeal), National Union Fire Insurance Company of Pittsburgh, PA ("National Union")The Travelers Indemnity Company Travelers Property Casualty Company of America Travelers Group, The Charter Oak Fire Insurance Company (Appellees, collectively "Insurance Companies" or "Insurers"), and Wells Fargo Insurance Services (not a party on appeal) in the Circuit Court of Monongalia County, West Virginia on April 14, 2011.  JA 32. The Complaint alleged violation of the West Virginia Unfair Settlement Practices Act, bad faith and breach of contract against the insurance carriers and for declaratory judgment.  JA 34-36.  Wilson Works' Complaint contained claims for negligence and breach of contract against Wells Fargo for its alleged failure as Wilson Works' insurance agent to obtain patent infringement coverage.  JA 36-38. The district court granted summary judgment to the Insurance Companies, JA 1511-1523, and this appeal followed.

### III.  STATEMENT OF FACTS

**A.    The Walhonde Amended Complaint**

The Amended Complaint filed in the underlying action, *Walhonde Tools, Inc. v. Wilson Works, Inc. et al*, U.S. District for the Northern District of West Virginia, Case No. 1:09-CV-00048 (the "*Walhonde* action"), <u>explicitly</u> states "the causes of action derive from the infringement by the Defendants of Untied States Patent No. 4.963,500, entitled 'Bolt-Type Boiler Wall Tube Tool'…".  JA 182. Count One alleges Wilson Works infringed the patent and induced others to infringe the patent.  JA 183.  Count Two alleges Wilson Works manufactured infringing tools and by selling infringing tools, intentionally interfered with the business relationships between Walhonde and its customers.  JA 186.  The final count alleges Wilson Works conspired with others to interfere with Walhonde's business relationships by infringing upon the '500 patent.  JA 187.  As the district court correctly observed, "[e]ach of the three counts relates to the alleged infringement by Wilson Works of the Patent No. 4,963,500 ("the '500 Patent")" and "the basis for the action is 'derived from the infringement of the '500 Patent." JA 1512.

**B.    Wilson Works' Discovery Responses**

In *Wilson Works, Inc.'s Responses to Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s First Set of Interrogatories* (hereinafter

"Responses"), Wilson Works represented that "2002 was the year in which Wilson Works, Inc. first manufactured the allegedly infringing" tool. According to Wilson Works, it ceased manufacturing the tools when it first became aware of the '500 Patent in 2007. JA 292. Therefore, according to Wilson Works, the manufacturing of the tools began on an unspecified date in 2002 and ended in 2007.

Wilson Works also produced the deposition of Troy Woodall, president of Wilson Works, taken on January 25, 2007, in response to *National Union Fire Insurance Company of Pittsburgh, Pa.'s First Set of Requests for Production of Documents*. In response to the question regarding the "most recent time you've [Wilson Works] made… [the tools] for anyone," Mr. Woodall testified, "The most recent ones were for Minnotte and I brought both invoices with me for them. And I've not made them since." JA 302. The invoices were made an exhibit to Mr. Woodall's deposition and are dated April 25, 2006 and August 23, 2006, respectively. JA 306.

## C.    The Policies

The Insurance Companies issued the following policies to Wilson Works.

Great American issued a series of annual primary CGL insurance policies to Wilson Works, for the collective period encompassing July 29, 2003 to July 29, 2008, bearing policy numbers PL 5574436, PL 5279771, PL 5279771-01, PL

5279771-02 and PL 5279771-03 (collectively, "the Great American Policies").

JA530-832.

Between July 29, 2008, and July 29, 2009, Wilson Works was a named insured under a Commercial General Liability Policy #313093978 with Columbia Casualty.  JA 204-255.

National Union issued a "Commercial Excess Liability Policy with Crisis Response" to Wilson Works under number EBU 2997768, covering the period July 29, 2008 to July 29, 2009 (the "National Union Policy"). JA 307-354.

The Charter Oak Fire Insurance Company issued a primary policy, number I-680-4293W44A-COF-02 for the period May 15, 2002 to May 15, 2003. JA 886-974.  The Commercial Excess Liability (Umbrella) policy issued by The Travelers Indemnity Company, policy number ISF-CUP-4293W60A-IND-02 covered the same policy period.   JA 976-1015 (collectively, "Travelers" or "Travelers policies").

## IV.  SUMMARY OF ARGUMENT

Confronted by what one court has described as "the legion of federal and state courts"[1] which have held patent infringement claims are not covered by commercial general liability policies, Appellant Wilson Works Inc.'s ("Wilson Works") single point raised on appeal is that the coverage decision would have been somehow different if only the district court had looked beyond the actual allegations made against Wilson Works by Walhonde Tools, Inc. ("Walhonde") in the underlying patent infringement case.  Wilson Works' argument is flawed on multiple levels.  First, as the Court will see when reviewing Judge Bailey's opinion, the district court did apply the proper standard in evaluating the pleadings and record when making the coverage determination. Secondly, Wilson Works contention that it did not knowingly infringe the patent does not change the conclusion that patent infringement is a risk not covered by a commercial general liability policy.  As this Court has ruled on two previous occasions, commercial general liability policies do not cover claims of patent infringement.  The district court's analysis and conclusion were correct and summary judgment should be affirmed.

---

[1]     *U.S. Test, Inc. v. NDE Envt'l Corp.*, 196 F.3d 1376, 1381 (Fed. Cir. 1999).

# V. ARGUMENT

1. **THE DISTRICT COURT CORRECTLY APPLIED WEST VIRGINIA LAW IN EVALUATING THE ALLEGATIONS IN THE UNDERLYING PATENT INFRINGMENT ACTION TO MAKE ITS COVERAGE DETERMINATION**

   A. **Contrary to Wilson Works' argument, in determining the duty to defend the district court applied the very standard as urged by Wilson Works in its brief.**

Wilson Works claims, without any citation to the order granting summary judgment, that the district court "looked no further than the four corners of the complaint" in determining whether the insurers had a duty to defend Wilson Works in relation to the *Walhonde* action and thus, failed to correctly apply West Virginia law. Appellant Br., p. 12. Wilson Works is wrong.

First, the district court did actually look beyond the allegations of the Amended Complaint. In fact, it noted any alleged property damage occurred outside the policy periods of Columbia Casualty and National Union and was made known to the president of Wilson Works prior to inception of the Columbia Casualty and National Union policies (JA 1515, 1521). The court is obviously referencing the deposition of Troy Woodall as well as Wilson Works' Responses to discovery propounded by the National Union (JA 1512). This information is absent from the *Walhonde* Amended Complaint. (JA 181-188). Therefore, Wilson Works is simply wrong when it claims the district court limited its analysis to the four corners of the Amended Complaint.

7

Moreover, the district court's order granting summary judgment recognized that "an insurer's duty to defend is tested by whether the allegations in the Plaintiff's Complaint are *reasonably susceptible* of an interpretation that the claim may be covered by the terms of the insurance policy." JA 1514 (emphasis added) *quoting Aetna Casualty & Surety Company v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). The district court also correctly observed "an insurer has a duty to defend an action against its insured only if the claim stated in the underlying Complaint could, *without amendment*, impose liability for risks the policy covers." JA 1514 (emphasis added) *quoting State Auto Mutual Insurance v. Alpha Engineering Services Inc.*, 208 W.Va. 713, 542 S.E.2d 876, 879 (2000).

The district court's decision was therefore not the result of the court applying the wrong standard for determining the duty to defend but was, rather, the result of the fact that the explicit allegations in the *Walhonde* action were not "reasonably susceptible" "without amendment" of being anything other than uninsured patent infringement, conspiracy and tortious interference claims arising from patent infringement. *See West Virginia Fire & Casualty Co. v. Stanley*, 216 W.Va. 40 602 S.E.2d 483 (2004) (no insurance coverage for a sexual abuse claim by examining the "essence" of the Complaint to determine intentional conduct was alleged); *Bruceton Bank v. U.S.F.&G. Ins. Co.*, 199 W.Va 548, 554, 486 S.E.2d 19

(1997); *State Bancorp, Inc. v. U.S.F. & G. Insurance Co.*, 199 W.Va. 99, 483 S.E.2d 228 (1997).

The case of *West Virginia Fire & Casualty Co. v. Stanley*, 216 W.Va. 40, 602 S.E.2d 483 (2004) discussed in Wilson Works  brief at pages 11-12 is actually good case authority supporting the standard applied by the district court.[2]   In *Stanley* the West Virginia Supreme Court made its determination that there was no insurance coverage for a sexual abuse claim by examining the "essence" of the Complaint to determine intentional conduct was alleged.  *West Virginia Fire and Casualty Co. v. Stanley*, 216 W.Va. at 53, 602 S.E.2d at 496.  Stated a slightly different way the court looked to the "gravamen" of the Complaint to determine whether it alleged intentional conduct.    216 W.Va. at 53, 602 S.E.2d at 496.  Similarly, examining the "essence" or "gravamen" of the Walhonde Tools Amended Complaint leads inescapably to the conclusion it alleged claims arising from patent infringement and related intentional conduct by Wilson Works (conspiracy and tortious interference).  *See*, *also*,  *Bruceton Bank v. U.S.F.&G. Ins. Co.*, 199 W.Va 548, 554, 486 S.E.2d 19 (1997) ("Nor do the remaining allegations of the underlying complaint alter the basic nature of the [Plaintiff's] action as one grounded essentially upon breach of contract.");  *State Bancorp, Inc. v. U.S.F.&G. Insurance Co.*, 199 W.Va. 99, 483 S.E.2d 228 (1997) (no coverage for civil

---

[2]    The district court even cited the *Stanley* case when addressing the duty to defend in its opinion.  JA 1514.

conspiracy, tort of outrage or breach of contract because despite additional allegations case was "essentially" for breach of contract).

Wilson Works argues the district court did not look beyond the four corners of the Amended Complaint. That argument is disproven above.    Tellingly, however, Wilson Works also fails to explain to this Court exactly what evidence the district court should have considered, or precisely how that evidence would have changed the coverage determination.    Wilson Works did not    present any such evidence to the district court, and it could not have, because no such evidence exists.  Quite simply, the record is devoid of any fact that would bring a patent infringement claim within the coverage of any of the policies issued to Wilson Works.

**2.    THE DISTRICT COURT CORRECTLY FOUND THAT COVERAGE A DOES NOT PROVIDE COVERAGE FOR PATENT INFRINGEMENT AND THE DERIVATIVE INTENTIONAL TORTS**

**A.    Patent Infringement Is Not Damage To or Loss of Use of Tangible Property**

The policies only cover "property damage" caused by an "occurrence."  JA -213, 309, 540, 936.  The term "property damage" is defined as "physical damage to tangible property" or "loss of use of tangible property that is not physically injured."  JA 225, 332, 557, 946.  The *Walhonde* action fails to allege either type of damage.

### 1.  Infringement of Patent is not "Physical Damage to Tangible Property"

The district court correctly observed a patent is not a tangible right subject to physical damage.  JA 1515.  In short, infringement of a patent is damage to *intangible* property.  *See Edmondson v. Am. Motorcycle Ass'n*, 7 Fed. Appx. 136, 148 (4th Cir. 2001) *citing Black's Law Dictionary*, 113 7th Ed. (1999) ("defining the term 'intangible asset as an asset that is not a physical object, such as a *patent*, a trademark, or goodwill'" (emphasis added)); *Newark Morning Ledger Co. v. United States*, 507 U.S. 546 (1993).

Because patent infringement refers to intangible property, it does not constitute "physical damage to tangible property" under the policies.  *See Greenwich Ins. Co. v. RPS Prods.*, 379 Ill. App. 3d 78, 86 (Ill. App. Ct. 2008) *citing Newark Morning Ledger Co.*, 507 U.S. at 556 (because patent is not tangible property subject to physical damage, patent infringement cannot fall within the definition of "property damage" where the policy specifically defines "**property damage**" as "physical injury to **tangible property**").  Wilson Works fails to muster any authority that indicates otherwise.

### 2.  The *Walhonde* Action Does Not Allege "Loss of Use of Tangible Property"

"Loss of use" in the insurance context means "the loss of the right to use property which is an incident of ownership."  *Commercial Union Ins. Co. v. Image*

11

*Control*, 918 F. Supp. 1165, 117 (N.D. Ill. 1996) *citing Gibraltar Cas. Co. v. Sargent & Lundy*, 574 N.E.2d 664, 671 (Ill. App. Ct. 1990). "'Loss of use' of property is different from 'loss' of property." *ABM Indus. v. Zurich Am. Ins. Co.*, 2006 U.S. Dist. LEXIS 67884, *37 (N.D. Cal. 2006) *citing Collin v. Amer. Empire Ins. Co.*, 21 Cal. App. 4th 787, 817 (Cal. Ct. App. 1994). The loss of a stream of income arising from the lease of property is damages for loss of property, rather than damages for temporary deprivation of property. *ABMs*, 2006 U.S. Dist. LEXIS 67884, *36-37.

For example, in *L. Ray Packing Co., v. Commercial Union Ins. Co.*, 469 A.2d 832 (Me. 1983), the insured was accused of violating antitrust laws and as a result, the fishermen plaintiffs were unable to sell herring. Similar to Wilson Works, the insured argued that herring was tangible property and the inability to sell the herring in the free market was a "loss of use" of the herring. *Id.* at 835. The court disagreed, noting the insured "misconceives the nature of the underlying action." *Id.* "Because the alleged damage can be characterized only as loss of profits, the underlying action fails to allege resulting 'property damage.'" *Id. See Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 423 (5th Cir. 2008) *citing Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 542 n.13 (5th Cir. 1992) ("purely economic losses…do not constitute 'the loss of use of tangible property'"); *Global ADR, Inc. v. City of Hammond*, 2004 U.S. Dist. LEXIS 23794,

12

*34 n.11 (E.D. La. 2004) *citing Houston Petroleum Co. v. Highlands, Inc. Co.*, 830 S.W.2d 153, 156 (Ct. App. Tex. 1990) ("the plain meaning of the insurance contract phrase, 'the loss of use of tangible property' does not include economic loss, i.e., the loss of…profits… .").

Here, Walhonde seeks compensation for lost profits incurred as a result of its clientele purchasing infringing tools from Wilson Works instead of renting them from Walhonde.  JA 1345, 1354, 1361.  There is no allegation, let alone evidence, that Walhonde was actually deprived of the use of tangible property.  Rather, Walhonde retained ownership and access to every one of its tools explaining, "we keep the tools inventoried, maintained and ready for next day-air delivery to any job site in the United States." JA 113.

Moreover, the deposition testimony quoted from the President of Walhonde, Kay McClure, Walhonde Tools' written discovery responses and the deposition of Walhonde'expert witness, Daniel L. Selby, demonstrate Walhonde's claims are for loss of *rental income* due to Wilson Works manufacture of counterfeit tools as opposed to any actual loss of use of those tools.  There is no allegation or discovery to support any contention Walhonde has been deprived of the actual physical possession or physical use of its own tools.  Instead, Walhonde's contention is, as would be expected, it lost rental income due to the allegedly

counterfeit tools manufactured by Wilson Works.  Mr. Selby's testimony says it all:

> Q.    Is it correct that your opinion on pre-patent expiration damages is based on the assumption that the defendants infringed merely by possession the accused tools?
>
> **A.**    I have not – I have not delved into the legalese of any contractual definitions. I have merely been told that they lost access to 350 units, ***and those units were to be rented at a rate of $125.00 per week.***

JA 1344-1345 (emphasis added)

In short, even considering the discovery responses and deposition testimony cited by Wilson Works to the district court, JA 1076-1080, it remains that the underlying action by Walhonde is one for patent infringement. The damages sought are not for physical damage to any of Walhonde's own patented tools nor the actual loss of use of those tools but instead are for loss of rental income sustained by Wilson Works' alleged infringement of the patent, a claim which is decidedly not covered under the policies as a "legion" of courts have  ruled.  *U.S. Test, Inc., v. NDE Envt'l Corp.*, 196 F.3d 1376, 1381 (Fed. Cir. 1999).[3]

---

[3]    Moreover, even though the underlying case claims damages for loss of rental income rather than actual loss of use or physical damage to tangible property, in an analogous situation in which claims for loss of use and property damage were made, Judge Copenhaver found claims for property damage and loss of use were not covered by a CGL policy.  *North American Precast Inc. v. General Casualty Company of Wisconsin*, (2008) U.S. Dist. LEXIS 26621 (S.D.W.Va. 2008).  In

Walhonde lost access to the market in the form of profit generation. It did not lose the use of its tools. The decision by certain of Walhonde's customers to no longer rent the tools does not equate to a "loss of use" by Walhonde of the tools. *See Harbor East-Office, LLC v. Travelers Cas. & Sur. Co*., 1999 U.S. App. LEXIS 20837 (4th Cir. 1999) (no "loss of use" where property was capable of being used during relevant period of time); *Ralph v. Pilkin*, 183 S.W.3d 362 (Tenn. App. 2005) (refusing to find lost earning or business losses constituted property damage because any alleged damage was to the rights which inhered in the copyright); *Hawaiian Ins. & Guar. Co. v. Blair, Ltd.*, 6 Haw. App. 447, 451 (Haw. Ct. App. 1986) (no "property damage" because "there is no allegation in the Complaint that [plaintiff] was deprived of the actual use of its products at any time"); *I.D.G., Inc. v. St. Paul Fire & Marine Ins. Co.*, 203 F.3d 835, 2000 U.S. App. LEXIS 1680, *16-17 (10th Cir. 2000); *ABM Indus Inc. v. Zurich American Ins. Co.*, 2006 U.S. Dist. LEXIS 67884 (N.D. Cal. 2006).

Moreover, the loss of income claimed by Walhonde as a result of Wilson Works manufacturing allegedly infringing tools is precisely the type of uncovered

---

*North American Precast Inc*. the Court based its decision on the line of cases from the West Virginia Supreme Court of Appeals beginning with *Webster County Solid Waste Authority v. Brackenrich & Associates*, 217 W.Va. 304, 617 S.E.2d 851, (2005); *Erie Insurance Property & Casualty Co. v. Pioneer Home Improvement Inc.*, 206 W.Va. 506, 526 S.E.2d 28 (1999); and *Corder v. William W. Smith Excavating Company*, 210 W.Va. 110, 556 S.E.2d 77 (2001).

economic loss[4] claimed by every plaintiff in every patent infringement case. Generally, patent holders incur lost profits when defendants manufacture or sell infringing products. Thus, finding "loss of use" property damage here would result in coverage for every patent infringement claim, contrary to the "legion" of cases holding that claims for patent infringement do not trigger CGL coverage. *See Ralph*, 183 S.W.3d 362 ("[w]e agree with the trial court that an action for patent infringement is not equivalent to an action for damages to tangible property or for personal injury as defined by this contract of insurance").

### B. Patent Infringement Is Not An "Occurrence"

Before coverage can be found to exist under a "commercial general liability policy, an 'occurrence' within the policy definition of that term must be determined to have the occurred." *Corder v William W. Smith Excavating Company*, 210 W.Va. 110, 114, 556 S.E.2d 77, 81 (2001). The policies define

---

[4] *See Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 423 (5th Cir. 2008) *citing Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 542 n.13 (5th Cir. 1992) ("purely economic losses…do not constitute 'the loss of use of tangible property'"); *Global ADR, Inc. v. City of Hammond*, 2004 U.S. Dist. LEXIS 23794, *34 n.11 (E.D. La. 2004) *citing Houston Petroleum Co. v. Highlands, Inc. Co.*, 830 S.W.2d 153, 156 (Ct. App. Tex. 1990) ("the plain meaning of the insurance contract phrase 'the loss of use of tangible property' did not include economic loss, i.e., the loss of…profits alleged by plaintiffs in the underlying suit). *Aluise v. Nationwide Mutual Fire Insurance Co.*, 218 W.Va. 498, 625 S.E.2d 260 (2005) (economic loss caused because the insured negligently or intentionally failed to disclose defects in home not covered by policy of insurance); *Nationwide Property & Casualty v. Comer*, 559 F. Supp. 2d 685 (S.D. W.Va. 2008) (no "occurrence" or coverage for negligent or intentional failure to disclose defects in house or for negligent selection of excavator in case seeking recovery of economic damages).

occurrence, in part, as an "accident."   JA 225, 331, 556, 945.   Wilson Works attempts in its "Statement of Facts"[5] to paint its alleged infringement of the '500 patent as being the result of an "accident" or "mistake."  Appellant Br., p. 6.  Being unaware of the '500 patent does necessitate a finding that the manufacture and sale of allegedly infringing tools was an "accident," as this conduct is entirely intentional.

"An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage... .  To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual."  *Id.* at *21-22 *citing State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 483 S.E.2d 228, 234 (W.Va. 1997). "The key to determining the existence of an 'occurrence' is whether a separate act or event or happening occurred at some point in time that lead to the [property damage complained of] or whether the [property damage] is tied to the original acts of…[the insured]."  *Id. citing Corder v. William W. Smith Excavating Co.*, 210 W.Va. 110, 556 S.E.2d 77, 84 (W.Va. 2001).  "If the property damage is tied to the original acts performed by the insured, then, despite any negligence, there is no coverage."  *Id.*

---

[5]     Wilson Works fails to cite to the record in support of a majority of its "facts" despite being required to do so pursuant to F.R.A.P. 28(a)(7) and (e).

Wilson Works is not in a position to contend that the act of manufacturing and selling a product, infringing or otherwise, is accidental conduct. According to the "Statement of Facts" Wilson Works began manufacturing the tool upon request from one of its customers. Appellant Br., p. 4-5. That Wilson Works failed to confirm whether the design of the tool was patented in no way changes the fact that the tool was deliberately made and sold. Wilson Works attempt to shift blame to its customers is irrelevant to the coverage determination because it does not alter the purposeful acts of manufacturing and selling the tool.

Further, the contention that the design of the tool was later discovered to be patented is not an independent, unexpected happening that led to the alleged damage. First, the '500 patent was perfected on June 26, 1990, long before Wilson Works began manufacturing and selling the tool. JA 175. Additionally, it was not the patent that caused the alleged damage; the damage "is tied to the original acts performed by the insured." *See Simpson-Littman*, 2010 U.S. Dist. LEXIS 95378 at *21-22 *citing Corder*, 556 S.E.2d at 84. Here, the manufacturing of an allegedly infringing tool is what caused the claimed damage. The claimed later acquired knowledge that the tool was a patented design was merely a consequence of enforcement activity by a patent holder seeking redress for damages resulting from the alleged, preexisting infringement.

Because Wilson Works deliberately manufactured and sold the tool, which is the cause of Walhonde's harm, there is no "accident" and thus no "occurrence." *See Cmty. Antenna Servs. v. Westfield Ins. Co.*, 173 F. Supp. 2d 505, 513 (S.D. W. Va. 2001) (no duty to defend where allegations were "unequivocal in claiming the damage flowed from willful and intentional acts of the insured, rather than accident or negligence"); *Fire Ins. Exchange v. Superior Court*, 181 Cal. App. 4th 388, 396 (Cal. Ct. App. 2010) (finding no coverage because the act of construction was intentional and not an "accident" even though the insureds acted under a mistaken belief that they had the legal right to do so).

Instructive in determining whether there was an occurrence is the decision in *Am. Modern Home Ins. Co. v. Corra*, 222 W.Va. 797, 671 S.E.2d 802 (2008). Wilson Works cited this case to the district court for the proposition that whether or not something was an "accident" is to be considered from the perspective of the insured. JA at 1075. While that perspective might be the beginning of the analysis it does not end there. *Corra* involved wrongful deaths and personal injuries resulting from an intoxicated, under aged driver who consumed alcoholic beverages at the insured's' home. Judge Goodwin certified the following question to the West Virginia Supreme Court of Appeals:

> The homeowner's policy in effect at the time of the underlying events provides for an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful

19

conditions, which results, during the policy period in… bodily injury or property damage."  Under West Virginia law, does knowingly permitting an underage adult to consume alcoholic beverages on a homeowner's property constitute an "occurrence" within the meaning of the [American] homeowner's policy at issue in this case?

222 W.Va. at 798, 671 S.E.2d at 803.

Despite the fact that the insured did not intend or expect or desire or foresee the resulting injury the West Virginia Supreme Court answered the question in the negative and held that an "occurrence", as defined in the policy, "does not provide coverage where the injury or damage is allegedly caused by the homeowner's conduct in knowingly permitting an underage adult to consume alcoholic beverages on the homeowner's property." 222 W.Va. at 801-802, 671 S.E.2d at 807.  Following the West Virginia Supreme Court's opinion providing an answer to the certified question Judge Goodwin held the insurer had no duty to defend the indemnify the insured.  *Am. Modern Home Ins. Co. v. Corra*, 2009 U.S Dist. LEXIS 98533 (S.D. W.Va. 2009).

Unfortunately for Wilson Works' argument regarding an accident being determined from the perspective of the insured, the Supreme Court in *Corra* held there can be no "occurrence" where the insured acted "knowingly".  "In the instant case, we believe that it is obvious that where a homeowner engages in conduct knowingly, that conduct clearly cannot be said to be unexpected and unforeseen from the perspective of the homeowner.  In other words, conduct engaged in

20

knowingly is not an 'accident' and thus not an 'occurrence' under Mr. Corra's homeowner's policy." 222 W.Va. at 801, 671 S.E.2d at 807. The court went on to specifically reject the same argument advanced by Wilson Works here that there is an "occurrence" unless the insured commits an intentional act and expects or intends the resulting damage:

> Second, Mr. Corra asserts that under our law an "occurrence" under a homeowner's policy exists unless the policy- holder commits an intentional act and expected the intended and resulting damage. We do not find this to be an accurate characterization of our law. As seen from our discussion above, an "occurrence," in addition to excluding intentional conduct, also excludes conduct that is foreseen and expected. Again, knowing conduct is certainly foreseen or expected, and thus cannot be considered an "occurrence."

222 W.Va. at 801, 671 S.E.2d at 807.

The issue of an "occurrence" was also addressed in *Erie Insurance and Property Casualty v. Poineer Home Improvement Inc.*, 206 W.Va. 506, 526 S.E. 2d 28 (1999). *Pioneer* involved a homeowner suit against a contractor alleging poor workmanship. 206 W.Va. at 508, 526 S.E.2d at 30. The court in *Pioneer* made a clear distinction as to what constitutes an "occurrence" which merits quotation at length.

> We quote with favor from *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 249, 405 A.2d 788, 796 (1979), wherein the Supreme Court of New Jersey stated, "As we have endeavored to make clear, the policy in question does not cover an accident of faulty workmanship but rather faulty

21

workmanship which causes an accident." (Citations omitted). The following illustration was offered in *Weedo* to mark the distinction between "business risks" and "occurrences" which give rise to insurable liability:

> When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the *homeowner or his neighbor standing below or to a passing automobile*, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The *happenstance* and extent of the latter liability is *entirely unpredictable* – the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon *tort concepts*, injury to persons and damage to other property constitute the risks intended to be covered under the CGL.

*Id.*, 81 N.J. at 240-41, 405 A.2d at 791-92.

We summarize by stating that CGL policies of insurance do not provide protection for poor workmanship; instead, these policies protect an insured from liability due to personal injury or property damage to *others* caused by the insured's negligence. The circuit court correctly determined that Erie had no duty to indemnify Pioneer for the faulty installation of siding and other work performed on the Skanes' residence.

22

*Pioneer Home Improvement*, 206 W.Va. at 511-512, 526 S.E.2d at 33-34 (emphasis added).

Applying these principles as to what is and what is not an "occurrence" the West Virginia Supreme Court concluded in *Pioneer* that the insurer had no obligation to defend or indemnify the insured for faulty workmanship. 206 W.Va. at 512, 526 S.E.2d at 34. Consistent with this analysis from *Pioneer* it can be said that making a specific tool as per customers' orders is not an "accident"; the fact that the manufacture of the tool results in a patent infringement claim falls into the category of "business risk" not covered by a CGL policy.

In *Webster County Solid Waste Authority v. Brackenrich & Associates*, 217 W.Va. 304, 617 S.E.2d 851 (2005) the West Virginia Supreme Court of Appeals again emphasized the need for an "occurrence" for CGL coverage to be triggered. In *Brackenrich* the court reviewed whether there was coverage under a CGL policy for allegations against an engineering firm for negligent design, breach of contract and negligent inspection relating to the construction of a landfill. In rejecting the insured's argument for coverage, including a claim for "loss of use", the court reiterated the "fundamental" requirement of an "occurrence" and rejected the same argument advanced here by Wilson Works:

> Despite its attempts to locate coverage under the commercial general liability policy, the Authority never squarely deals with the fundamental issue that the trial court correctly identified. Absent an occurrence, as that

23

term is defined under the policy, there can be no coverage under the policy at issue, or any other commercial general liability policy. In trying to circumvent the rulings of *Corder* and *Erie* regarding the lack of coverage under commercial general liability policies for negligence claims arising from faulty workmanship, the Authority cites the fact that the policy provides coverage for property damage. Because the policy definition of property damage includes "loss of use of tangible property that is not physically injured," the Authority argues that there has to be coverage based on its demand for loss of use damages. In predicating its coverage argument on the type of damages it seeks, the Authority overlooks the fact that the issue of damages is not relevant until an occurrence can first be demonstrated. The policy definition of property damage, which requires that such damage be caused by an occurrence, underscores this point. The policy provides that coverage "applies to 'bodily injury' and 'property damage' only if. (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'. . . ." Simply put, the Authority's reliance on the definition of property damage as a means of demonstrating coverage is unavailing as that definition, like the policy in general, requires the existence of an occurrence before any legal duty arises with regard to providing coverage.

217 W.Va. at 310, 617 S.E.2d at 857.

Judge Copenhaver had an opportunity to apply the above line of cases in *North American Precast, Inc v. General Casualty Company of Wisconsin*, 2008 U.S. Dist LEXIS 26621 (S.D. W.Va. 2008). In that case a claim was made against a CGL policy for substantial damages, including loss of use, resulting from the collapse of defective concrete panels at a construction site. *Id*. at *2-3. After

extensively reviewing the West Virginia cases requiring an "occurrence" to trigger coverage the court concluded there was no coverage for any of the claims asserted:

> The claims for loss of use or delay and even the "collateral damage" such as to test and replace the panels stem solely from the defective nature of the panels and are merely stand-alone poor workmanship claims, In view of the West Virginia authority set forth in *Brackenrich*, *Corder*, *and Pioneer*, the claims for the loss of use or delay and any "collateral damage" such as testing and replacement of the panels are not covered by the policy. To hold otherwise would convert the CGL policy into a performance bond---which it plainly is not.

*Id.* at *21-22.

Read together, these decisions from the West Virginia Supreme Court demonstrate that the conduct at issue in this matter, manufacturing tools, is not an "accident" and thus there is no "occurrence" regardless of whether Wilson Works did so with the intent to infringe the '500 Patent. As definitively stated by the court in *Corder*, absent an "occurrence" there can be no coverage. *Corder*, 210 W. Va. at 114, 556 S.E.2d at 81.

Further, as correctly noted by the district court, the intentional nature of claims for intentional interference with business relationships and conspiracy preclude any finding such conduct constitutes an "occurrence." JA 1516. *See Haney v. Cont'l Cas. Co.*, 2010 U.S. Dist. LEXIS 3953, *10 (S.D. Miss. 2010), *citing AmSouth Bank v. Gupta*, 838 So.2d 205, 214 (Miss. 2002) ("coverage is precluded for the tortious interference claims…because those claims require

25

'intentional and willful' conduct"); *Markel Ins. Co. v. Danieley*, 2010 U.S. Dist. LEXIS 10833 (S.D. W.Va. 2010), *citing Fibreboard v. Hartford Accident & Indemnity Co.*, 20 Cal. Rptr.2d 376, 387 (Cal. Ct. App. 1993) ("[a]s a matter of law, a civil conspiracy cannot occur by accident").

### C.   The District Court Correctly Observed that Any Alleged "Property Damage" Did Not Occur During the National Union or Columbia Casualty Policy Periods

The National Union and Columbia Casualty policies require any alleged "property damage" occur "during the policy period." JA 213, 309. Regarding "loss of use" damage, the policies provide, "All such loss of use will be deemed to occur at the time of the 'occurrence' that caused it." JA 225, 332. The National Union policy further states, "In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **Occurrence** and shall be deemed to occur only when such damage *first commenced*" (emphasis added). JA 331.

In Wilson Works' Responses, it represented that it began manufacturing of the Tool on an unspecified date in 2002. JA 292. Because the National Union policy provides that continuing loss "shall be deemed to occur only when such damage first commenced," the alleged "**Occurrence**" took place in 2002, approximately seven years before the National Union policy incepted. As correctly noted by the district court, even if the *Walhonde* action alleged "property

26

damage," which it does not, the purported damage undisputedly did not occur during the National Union policy period.  JA 1515.

The district court also correctly found that any alleged property damage did not occur during the Columbia Casualty policy period, where Wilson Works' manufacturing of the allegedly infringing tools ceased prior to inception of the Columbia Casualty policy.  JA 1515.

**3.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT COVERAGE B IS NOT TRIGGERED BY THE *WALHONDE* ACTION**

### A.    "Patent Infringement"  Does Not Constitute "Advertising Injury"

The district court was correct when it found, "Coverage B is equally unavailing to the plaintiff."  JA 1517.  The precise coverage issue now before this Court was addressed in *St. Paul Fire and Marine Insurance Company v. Advanced Interventional Systems Inc.*, 824 F. Supp. 583 (E.D. Va. 1993), *aff'd*, 21 F.3d 424 4th Cir. 1994) (unpublished) 194 U.S. App. LEXIS 6979.  The facts mirror those in this case.   *Advanced Interventional Systems Inc.* addressed whether a patent infringement claim brought against Advanced Interventional Systems ("AIS"), by Pillco Limited Partnership ("Pillco") was covered under an insurance policy issued by St. Paul to AIS.  *Id.* at 584.   In *Advanced Interventional*, "advertising injury" in the St. Paul policy was defined as:

> Injury caused by any of the following offenses that result
> from the advertising of your products or work:

27

1.    libel or slander

2.    written or spoken material made public which belittles the products or work of others

3.    written or spoken material made public which violates an individual's right of privacy

4.    unauthorized taking of advertising ideas or style of doing business

5.    infringement of copyright, title or slogan

*Id.* at 584.  This definition is similar to the policies issued to Wilson Works by Great American, Columbia Casualty and National Union but is broader that that contained in the policies issued by Travelers which do not include "unauthorized taking of advertising ideas or style of doing business".  JA at 584, 225, 331, 556, 955. Applying this definition, the court concluded patent infringement claims do not meet the definition of "advertising injury."

> By its plain terms, this definition is not met unless there first exists one of the five predicate offenses, namely (1) libel or slander, (2) product belittlement, (3) violation of individual privacy, (4) unauthorized taking of advertising or style of doing business, or (5) infringement of copyright, title or slogan. If one of these predicate offenses exists, then a second condition must be found to exist, namely the injury caused by the predicate offense must result from advertising. Of course, if no predicate offense exists, then the inquiry ends; there can be no advertising injury. That is precisely the result here because Pillco's patent infringement and inducement to infringe claims do not involve any predicate offense.

*Id.* at 584. The court's analysis was straight forward and instructive. To determine whether the patent infringement claim against AIS fell within coverage the court employed a two step analysis. *Id.* at 585. First, the claim must fall within the defined offenses to constitute "advertising injury." Second, any alleged damage must have resulted result from the insured's advertising. *Id.* at 585.

Similar to the present case, just a cursory review of the offenses listed in the insurers' policies establishes "patent infringement and inducement to infringe claims do not involve any predicate offense." *Id.* at 585. JA 225, 331, 556, 955. "And it is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringement of 'copyright, title or slogan,' to then include patent infringement, *sub silentio*, in a different provision, by reference to 'unauthorized taking of … [the] style of doing business'...". *Id.* at 596.

The reasoning and analysis of the court in *Advanced Interventional Systems Inc*. was affirmed by this Court. 21 F.3d 424 (4th Cir. 1994) (unpublished) 194 U.S. App. LEXIS 6979. After quoting and reviewing the definitions for "advertising injury" and "personal injury" this Court concluded: "As the district court correctly observed, neither patent infringement nor inducement of patent infringement are enumerated predicate offenses under the advertising injury or personal injury provisions of the policy." *Id*. at *7. The Court then affirmed the decision finding

no insurance coverage for the patent infringement or inducement to infringe claims. *Id.* at *9.

Quite simply, patent infringement is not a predicate offense within the "advertising injury" definition of the policies. *See also RH&M Machine Co. v. Westfield Ins. Co.*, 141 F.3d 1159 (4th Cir. 1998) (unpublished) 1998 U.S. App. LEXIS 8353 (4th Cir. 1998), *U.S. Test, Inc.*, 196 F.3d 1376; s*ee also Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1142 (9th Cir. 2003) *citing Maxconn, Inc. v. Truck Ins. Exchange*, 74 Cal. App. 4th 1267, 1275-1276 (1999) ("[t]he absence of any express reference to patent infringement in the policy would lead a reasonable layperson to the conclusion that patent infringement is not covered"); *Sunex*, 185 F. Supp. 2d 614, 618 (D. S.C. 2001) ("the advertising injury definition in the policies consists of distinct categories of actionable conduct…yet, there is no mention of patent infringement"); *Rhein Bldg. Co. v. Gehrt*, 21 F. Supp. 2d 896, 900 (E.D. Wis. 1998) *citing* ("[i]t is instructive to note, however, that most courts have concluded that general liability insurance policies do not cover liability for patent infringement").

## B. Walhonde's Alleged Injury Was Not Caused by Wilson Works' Advertising

Wilson Works' failure to show the *Walhonde* action alleges an enumerated offense alone is dispositive and the coverage analysis can end here. Additionally, however, neither can Wilson Works meet the second requirement that "the

predicate offense must result from advertising." *Advanced Intervional Sustems Inc.*, 824 F. Supp. at 585. In its Responses, Wilson Works admitted that it never marketed the allegedly infringing tools. JA 291. Further, the damage alleged in the *Walhonde* action relates to the manufacture and sale of the tool itself rather than the nonexistent advertising activity by Wilson Works. Thus, any alleged damage is not caused by any purported advertising.

The court in *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1274-1275 (1992) addressed the requirement for a causal connection between "advertising activities" and the damages sought to be insured in the context of a bank seeking coverage for claims of unfair competition. Although *Bank of the West* did not involve a patent infringement coverage dispute, the court recognized the causal connection "rule" had been applied in patent infringement coverage cases. "Under this rule, it has been held that a claim of patent infringement does not 'occur[] in the course of... advertising activities' within the meaning of the policy even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than its advertisement." *Id.* at 1275 *quoting National Union Fire Ins. Co. v. Siliconix Inc.*, 729 F. Supp. 77, 80 (N.D.Cal. 1989) and *Meyers & Sons Corp. v Zurich American Ins.*, 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206, 1208-1209 (1989). *See also*, *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994) ("unless

31

[the] claim was that [the insured] infringed the patent in its advertising, in a manner independent of its sale of the [infringed product], the…loss is not a form of piracy arising out of or committed in advertising and is not covered under the policies"); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 20 F. Supp. 2d 798, 802 (M.D. Pa. 1998).

### C.  The Alleged "Personal and Advertising Injury" Ceased Prior to Inception of the National Union and Columbia Casualty Policy Periods

Insurance provided by the National Union policies only apply "if…the **Personal and Advertising Injury** is caused by an **Occurrence**…committed during the **Policy Period**" (JA 309) which in turn relates to the enumerated offenses under the National Union policy.  The Columbia Casualty policy similarly provides, "This insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."  JA 217.

*State Bancorp, Inc. v. United States Fid. & Guar. Ins. Co.*, 199 W.Va. 99 (W.Va. 1996), is instructive on the concept.  Like the National Union and Columbia Casualty policies here, Aetna's policy expressly provided that "this insurance applies to 'personal injury' only if caused by an offense…committed…during the policy period."  *Id.*  This means, "it is the date when the offense occurs that triggers the coverage rather than the date of the

injury." *Id. citing Gen. Accident Ins. Co. v. West American Ins. Co.*, 49 Cal. Rptr. 2d 603, 606 (Cal. Ct. App. 1996).

Wilson Works has admitted no purported infringement occurred during the National Union and Columbia Casualty policy periods. In *Wilson Works, Inc.'s Responses to Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s First Set of Interrogatories* (hereinafter "Responses"), Wilson Works specifically represented that manufacturing of the Tool ceased in 2007 when it learned of the '500 Patent. JA 292. Although this is somewhat inconsistent with the deposition of Mr. Woodall, who testified that the last production and sale of the Tool was to Minnotte in 2006 JA 302, given that the National Union and Columbia Casualty policies were in effect from July 29, 2008 to July 29, 2009, whether Wilson Works actually ceased production in 2006 or 2007 is immaterial to the conclusion, as either date is undisputedly prior to inception of the National Union and Columbia Casualty policies.

### D. Damages Arising Out Of Patent Infringement are Specifically Excluded by The Columbia Casualty, Great American And National Union Policies

Even if the *Walhonde* action alleged "personal and advertising injury," which it undisputedly does not, the policies contain a specific exclusion that is directly on point:

O.    **Infringement of Copyright, Patent, Trademark, or Trade Secret**

This insurance does not apply to 'personal injury and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress, or slogan. JA 218, 316, 546.

This exclusion has been found to be clear and unambiguous. *Feldman Law Group P.C. v. Liberty Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 88561 (S.D.N.Y. 2011); *Greenwich Ins. Co.*, 379 Ill. App. 3d at 85-86.

"[I]f an exclusion is written to eliminate coverage for injuries arising out of or occurring by reason of certain events or causes, there should not be coverage regardless of the theory of liability alleged against an insured." *Nutter v. St. Paul Fire & Marine Ins. Co.*, 2011 U.S. Dist. LEXIS 6715, *7-8 (N.D. W.Va. 2011), *citing* Windt, Insurance Claims and Disputes 11:22A *Arising out of Exclusions* (5th ed. 2010). "Case law has found the terms 'arising from' and 'resulting from' to be synonymous." *Nutter*, 2011 U.S. Dist. LEXIS 6715 at *7-8. "These courts have similarly upheld such exclusions if the injury is causally connected to 'the excluded operation.'" *Id. citing Secura Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320 (Ct. App. Minn. 2008); *American Comm. Ins. Co. v. Porto*, 811 A.2d 1185 (R.I. 2002); *Paradigm v. Texas Richmond Corp.*, 942 S.W.2d 645 (Tex. App.

1997); *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45 (Ct. App. 2d 1998); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. United States Liquids, Inc.*, 271 F. Supp. 2d 926 (S.D. Tex. 2003).

All of the damages alleged in the *Walhonde* action arise out of patent infringement. There is no dispute that "Count I" for "Infringement of U.S. Patent 4,936,500" results from infringement of patent. *See Greenwich Ins. Co.*, 379 Ill. App. 3d at 86-87 ("it is clear that the patent infringement exclusion applies" to the allegations of patent infringement contained in the underlying complaint).

As correctly noted by the district court, the remaining causes of action for tortious interference and conspiracy also arise out of the alleged patent infringement. JA 1512. Indeed, paragraph 8 of the Amended Complaint in the *Walhonde* action plainly states: "This action arises under the patent laws of the United States, specifically 35 U.S.C. § 101 *et seq.* and the causes of action derive from the alleged infringement by the defendants of United States Patent No. 4,936,500." JA 182 (emphasis added).The causes of action for tortious interference and conspiracy stem from the infringement of the '500 patent, such that, without the infringement, these causes of action would not even exist. *See T C. Development and Design, Inc. v. DiscountRamps.com LLC et al.*, 2011 U.S. Dist. LEXIS 36031, *17 (E.D. Wis. 2011) (where complaint alleged patent infringement, unfair competition, improper business practices and injury to

business, there is no coverage for the entire action because "each of the claims is predicated on the infringement of [the] patent…thereby falling squarely within this exclusion"); *Ventana Med. Sys. v. St. Paul Fire & Marine Ins. Co.*, 2011 U.S. App. LEXIS 21374, *3 (9th Cir. 2011); *Parkham Indus. Distribs. v. Cincinnati Ins. Co.*, 2008 U.S. Dist. LEXIS 11642, *12-13 (W.D. Ky. 2008) (no coverage under identical exclusion for misrepresentation because, although "the complaint states separate claims for patent infringement and misrepresentation, the essential facts cannot be parsed in such as fashion as to excise the 'arising out of' patent infringement from the misrepresentations alleged").

## E.  Plaintiff Has Failed To Carry Its Initial Burden to Demonstrate An Offense Occurred Within Travelers Policy Period

Wilson Works has made no showing or produced any evidence to prove "property damage" under Coverage A or an "offense" under Coverage B  "during the policy period" as both Travelers' policies require.  JA 936, 954 (primary policy) and JA 980, 997 (umbrella policy).  In discovery Wilson Works was asked by Travelers to provide the date of manufacture and date of sale for each allegedly infringing tool.   Wilson Works responded to Travelers discovery requests by referring to its response to the identical interrogatories served by Columbia Casualty Company.  JA 1017.

In response to Columbia Casualty's Interrogatories  Wilson Works stated that it did not have access to the documents necessary to identify when each tool

was manufactured or sold, but was requesting that information from its former counsel.  JA 1021-10-22.  Wilson Works' Interrogatory Answers also refer to the deposition transcript of Troy Woodall taken in the underlying action.  JA 1022.  That deposition can be read in vain for any specific date certain on which an infringing tool was sold during Travelers' policy period of May 15, 2002 to May 15, 2003.  The only two sales invoices produced at the deposition reflected sales of August 23, 2006 and April 25, 2006.  JA 304, 306.

Again, although it is a moot issue because the patent infringement claim is not covered for the reasons set forth above, even if Wilson Works could show that one of the enumerated offenses was implicated, Wilson Works has failed to show that any such advertising injury offenses was committed during the Travelers policy period.  *Camden-Clark Memorial Hospital Ass'n v. St. Paul Fire & Marine Ins. Co*., 224 W.Va. 228, 682 S.E.2d 566 (2009):  ("In actions to determine applicable coverage's under a policy of insurance, this Court has noted that under West Virginia law, the plaintiffs must prove both the existence of an applicable insurance contract and its material terms.  It is only when the plaintiffs have established a prima facie case of coverage that the burden of production shifts to the defendants." *Payne v. Weston*, 195 W.Va. 502, 506, 466 S.E.2d 161,165 (1995); see also, syl. pt. 1, *Jarvis v. Pennsylvania Cas. Co*., 129 W.Va. 291, 40 S.E.2d 308 (1946).

37

Wilson Works cannot meet its burden of demonstrating an offense occurred with the policy period by suggesting a calendar year in which a tool may have been sold. The specific date is necessary because a plaintiff in a patent infringement case cannot recover damages for any infringement committed more than six years before the filing of the complaint. 35 U.S.C. § 286. The *Walhonde Tools* patent infringement case was filed on April 8, 2009. Applying the six year limitation, Walhonde Tools can only recover for any infringement occurring after April 8, 2003. The Travelers policies expired on May 15, 2003. Accordingly, there is only a 37 day window from April 8 to May 15, 2003 for any patent infringement offense to fall within the Travelers policy period. Wilson Works has produced no evidence of any alleged offense occurring within this 37 day period and so has not met its initial burden bringing a claim within the insuring agreement. For this additional reason Travelers was entitled to summary judgment.

### F.    The Excess And Umbrella Carriers Have No Duty to Defend

Wilson Works' brief focuses on and appears to challenge only the district court's ruling the insurance carriers had no duty to defend Wilson Works in the *Walhonde* action. Appellant Br., p. 1 "STATEMENT OF THE ISSUES". In addition to the foregoing arguments, the excess and umbrella carriers, National Union and The Travelers Indemnity Company, have no duty to defend. National Union's duty to defend is not triggered unless and until "the total applicable limits

of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss,"** which is defined, in part, as "those sums actually paid as judgments or settlements." JA 310, 329. The same is true for Travelers' Umbrella Policy. JA 980, 997. Wilson Works has admitted the scheduled underlying insurance has not been exhausted. JA 34. As such, National Union and Traveler's Umbrella policy do not have, and will not ever have, an obligation to respond to this claim. See e.g., *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008) (citing cases). *Vencill v. Cont'l Cas. Co.*, 433 F. Supp. 1371, 1378, -79 (S.D. W.Va. 1997) *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749, 754 n.8 (W.Va. 1993) ("Excess insurance is routinely written in the insurance industry with the expectation that the primary insurer will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted.…Thus, the primary insurer acts as a sort of deductible and the excess insurer does not expect to be called upon to assist in these details.") (quoting 7 C J. Appleman, *Insurance Law and Practice* § 4682 (1979 & Supp. 1992)).

Wilson Works should concede this point in its Reply Brief and dismiss National Union and The Travelers Indemnity Company in relation to claims made under the excess and umbrella policies.

**G.     There Is No Need To Certify A Question Of Law To The West Virginia Supreme Court Of Appeals**

In the last sentence of its brief Wilson Works asks for alternative relief by requesting the Court "certify a question to the Supreme Court of Appeals of West Virginia to clarify this area of law." Appellant Br., p. 13.  Wilson Works does not otherwise discuss in its brief this alternative relief, cite any supporting authority or even formulate the proposed question it would have the Court certify.  While West Virginia law does provide a mechanism allowing a court to certify a question of law to the West Virginia Supreme Court if there is no controlling appellate authority on the issue, there is no need to do so here.  W.Va. Code § 51-1A-3 provides a relevant part:

> The supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States or by the highest appellate court or the intermediate appellate court of another state or of a tribe or of Canada, a Canadian province or territory, Mexico or a Mexican state, if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

As noted by the court *In Re: Charco, Inc.*, 2004 U.S.D. LEXIS 23160 (S.D. W.Va. 2004) the provisions of the statute "are discretionary for both the certifying and the answering court, *i.e.*, there is a no requirement either that a court seek certification or that the Supreme Court of Appeals answer a certified question." *Id.* at *6 *citing Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857

40

(1979).  "A party seeking certification has the burden showing there is no controlling West Virginia president regarding the potential certified question.  *Id.* *citing O'Brien v. Tri-state Oil Tool Industries Inc.*, 566 F. Supp. 1119, 1122-23 (S.D. W.VA. 1983).  As this Court has ruled, "the mere difficulty of ascertaining local law does not appear to be an adequate reason for remitting the parties to a state tribunal." *Imperial Colliery Co. v. Cities Service Oil & Gas Corp.*, 1993 U.S. App. LEXIS 16821 *citing Miller v. N.R.M. Petroleum Corp.*, 570 F. Supp. 28, 29-30 (N.D. W.Va. 1983).

Given the ample West Virginia authority on how insurance policies are to be construed as written and most notably the absence of the term "patent infringement" in the insuring language of any of the policies under scrutiny (except insofar as patent infringement is mentioned as being specifically excluded from coverage) and the substantial weight of appellate authority on the subject, there is no need to defer this issue to the West Virginia Supreme Court.  There is certainly "sufficient West Virginia case law which will allow the court to reach a reasoned decision." *In Re Charco*, 2004 U.S. Dist. LEXIS 23160, *7.  In *Imperial Colliery*, *supra*, this Court affirmed the district court's denial of a motion to certify and itself denied the renewal of the motion on appeal citing approvingly the district court's recognition that "there is a considerable body of law available to permit a

principled conclusion.  The absence of a case exactly on point is not the issue." *Id.*
at *6.

## VI.  CONCLUSION

The policies issued to Wilson Works do not provide coverage for the patent
infringement claims asserted by Walhonde.  The insurance companies have
presented authority from a "legion" of courts addressing this issue including cases
on point from this Court.  Wilson Works has failed to cite a single case with a
contrary holding nor has it even attempted to distinguish any of the cases relied
upon by the insurers and which form the basis of the district court's opinion.  The
district court's order granting summary judgment to the insurance carriers should
be affirmed.

## VII.  ORAL ARGUMENT IS NOT NECESSARY

The Appellees do not believe oral argument would aid the decisional
process.

/s/ John Andrew Smith
John Andrew Smith
(WV Bar No. 3470)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
P.O. Box 3843
Charleston, WV 25338-3843
*Counsel for Travelers Indemnity Company,*
*Travelers Property Casualty Company of*
*America, Travelers Group and The Charter*
*Oak Fire Insurance Company*
*Lead Counsel for Appellees*

Stephen J. Dalesio
(WV Bar No. 4242)
Swartz Campbell LLC
4750 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
*Counsel for Great American*
*Insurance Company &Great*
*American Company and Great*
*Group*

Patrick Fredette
(OH Bar No. 0080523)
Jennifer Bilz
(OH Bar No. 0080413)
McCormick Barstow LLP
Scripps Center
312 Walnut Street, Suite 1050
Cincinnati, OH 45202
*Attorneys for American International
Group, Inc., American International
Companies & National Union Fire
Insurance Company of Pittsburgh, PA.*

Michael Kotula, Esq.
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556
*Counsel for Great American Insurance
Company & Great American Insurance
Group*

Joseph Craycraft
(WV Bar No. 7920)
Swartz Campbell, LLC
1223 Main Street, Suite 1000
Wheeling, WV 26003

*Attorney for Columbia
Casualty Company*

43

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*9,976*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: September 4, 2012               /s/ John Andrew Smith
                                       *Lead Counsel for Appellees*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of September, 2012, I caused this Consolidated Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Stephen S. Murphy
> LAW OFFICES OF S. SEAN MURPHY, LC
> 265 High Street, Suite 601
> Morgantown, West Virginia  26507
> (304) 296-7170
>
> *Counsel for Appellant*

I further certify that on this 4th day of September, 2012, I caused the required copies of the Consolidated Brief of Appellees to be hand filed with the Clerk of the Court.

/s/ John Andrew Smith
*Lead Counsel for Appellees*